This cause was very learnedly argued in September Term last, by Chetwood, Griffith and A. Ogden, for the plaintiff, and I. H. Williamson and R. Stockton for the defendant; and at this term the following opinions were given.
Pennington, J.
The principal question brought up by this case, for the consideration of the Court, is, what estate or interest the lessor of the plaintiff, Sarah Terril, in the events that have happened, took under the will of her father, Daniel Sayre, in the premises in question.
It is an unquestionable, known, and acknowledged rule in the construction of wills, that the intent of the testator, as far as that intent can be supported by the rules of law, must govern. That this intent must be taken from the words of the will, connected with the circumstances of the testator’s family and estate.
In the view I have of the subject of controversy in this cause, it does not appear material to me, what estate John and Abraham took in that part of the farm devised to them; whether they took a contingent remainder, or a determinable fee, as urged by one of the counsel for the plaintiff^ the same consequence follows. I incline to think, however, that the testator intended to give John and Abraham, an estate for life, with a contingent remainder in fee. In the preceding devise to Daniel, he makes use of proper words to pass a fee, heirs and assigns. He then gives to John and Abraham, a certain portion of his homestead farm; omitting those words, and uses no other denoting an intention to create a fee; he annexes to this devise, a condition that they maintain their sister Phoebe, who it is probable was somehow or other, unfortunate; or perhaps unmarried, and of course, unprovided for: this, it is contended, was charging the land beyond [*] the annual profits, and therefore, iu a will ought to be construed as carrying a fee; I think, however, that it is fairly to be presumed, that his expectation was, that this support of a single woman, was to come out of the annual produce of the farm. The testator then takes notice, that his sons were neither of them married, provides, that in case *449 they should continue so until their death, the part of his farm devised to them, should be equally divided among his surviving children. He then goes on and declares, that in case either John or Abraham should marry and have a child, that his or their part, should be free and clear to him or them or their heirs and assigns. If the devise over to the surviving children, cannot strictly be said to be a contingent remainder, yet it is to be supported as an executory devise; which ever way you take it, it is good. The first important question then is, what estate the devisees over, took in the land devised to them. The rule of law on the question is, that there must either be words of limitation added to the devise, or from the whole of the will taken together, and applied to the subject matter of the devise, it must appear that the intention of the testator was to give a fee, or else the devisee takes only an estate for life; there are no words of limitation added to this devise over. It is, however, contended by the counsel for the plaintiif, that there are words in the will, that shew the testator’s intent, that the devisees should take a fee. “ 1st. Jls for such worldly estate wherewith it hath pleased God to Hess me,” shews that the testator meant to dispose of all his estate, and not to die intestate. It appeal's to me that these words do not of themselves import such an intent, but were introduced to make a distinction between his temporal and his eternal concerns, of which he had before made mention; nor can I find any case where these words alone, unconnected with any subsequent mattei', wex'e held to pass a fee. 2d. That the word farm, is equivalent to the word estate or interest in the land, and was so considered by the [*] testator. The words in the devise to John and Abraham arc, “ all the remaining pari of my homestead farm,” and in the devise ovex*, are “ theirparl of my farm, so gave.” It is true, thatthe words, I groe all my estate, have been construed to pass a fee; and even where wox'ds of locality are added, as all my estate in Jl. it has been held that all the testator’s interest in such particular lands will pass, though no words of limitation are added, 2 P. Williams 524; because the law’says, that the word estate comprehends not only the land, which a man has, but also the inlex'est he has in it. The word farm carióos no such meaning. 3d. The concluding clause is brought in to help out the testator’s intention, wherein he gives away all the remaining part of his moveable estate; this, it is said, shews that the testator thought that he w'as giving away all his estate. It does not appear to mo to shew any thing more than that the testator thought that he was disposing of all his personal estate. But then it is said, that the concluding *450 words, taken in connexion with the introductory words, before taken notice of, shew the intent of the testator to pass a fee, and for this the court is referred to the case of Wallis v. Jackson, Cowp. 299. The- concluding clause in this case, was “I also give and bequeath unto my dearly beloved mother, all the remainder and residue of all the effects both real and personal which I shall die possessed of. The court referred to the introductory words, all my worldly substance, to explain the words all his real effects, in the subsequent residuary devise; and from the whole will taken together, held that the residuary devise carried afee. The cases, to my mind, bear no resemblance ; the question in the case under consideration, is not whether the residuary bequest of all the remainder of the moveable property to the daughters, carried a fee; but whether an intermediate devise over, of a certain portion of a farm carried a fee; besides, there is a great difference between real effects, and moveable estate. 4th. Another ground for construing this devise over, [*]. a fee, taken by the counsel for the plaintiff, is, that a fee was devised to John and Abraham; and that the same estate was given over; therefore that the devise over must carry along with it, all the qualities of the first estate. If I am right in the construction which I have given to the devise, to John and Abraham; the first answer which I shall give to this part of the argument, will be conclusive, which is, that the clause of the will devising a fee, contingent or determinable, which ever it may be denominated, was subsequent to the devising clause under consideration, and of course could not have been referred to in it; but not relying alone on this construction, I admit that the words so gave, are relative words; the words are, “his or their part of my farm so gave.” To my mind, these words refer to the land, that is, a description of a particular part of the land which he intended to devise, and not the quantity of interest or estate which he intended to create by the devising clause. Besides, the estate or interest devised to John and Abraham was clearly depending on the contingency of their marrying, and having a child; in one event they had a fee, and in the other, only an estate for life. It cannot easily be conceived that the testator intended his daughters, the devisees over, should take an estate depending on the same contingency. It is observable, that the testator, when he meant to create a fee, made use of apt and appropriate words, and that be appears to have understood the difference between an absolute estate, and a qualified or lesser one. In the devise to his wife, of a portion of the real estate, he expressly gave it to her during her life. I cannot, on the whole, discover *451 from the words of the will, or any circumstance connected with the family or estate of the testator, an intention in the testator to give a fee. There must be words, which by their necessary implication, import in the testator an intention to devise a fee; otherwise, nothing but an estate for life passes. If the intention of the testator is doubtful, [*] the rule of law must take place, Cowp. 355. Although great allowances are made in construing wills, to get at the intention of the testator, formal words are not required, as in other instruments of conveyance, yet we must have some solid ground to tread on. If we suffer our imaginations to lead us into wild fields of fancy, property will have no permanent resting place, but floating in the capricious element of conjecture, it will be this man’s to day, and another’s tomorrow. That the rule of law that gives rise to this controversy is inconvenient, and often causes injustice, is not denied, and that the Legislature wisely changed it, as it respects all devises subsequent to the act; but wc are construing a will made in 1763, and in doing which, must be governed by the existing law's at that time.
The next subject of inquiry is, w'hich of the testator’s children take, under the devise over; he had nine children living at the time of making his will, and also at his death, but only two surviving at the time of the death of Abraham, to wit: the lessor of the plaintiff, and Abigal Brookfield. There is very little difficulty in my mind on this question. I think it must go to the children living at the time of the contingency happening, that is, the death of Abraham. The words surviving children, are best answered by this construction. Lord Hardwicke, in 1 Ves. 114, gives the rule in such cases, and the reason, of it, and fixes on the time that the contingencies happened. Lord Mansfield, in Cowp. 312, follow's the opinion of Lord Hardwicke: — His language is, “The great point in all cases of this kind is, the time w’hen the legacy is to vest; for that is the period that the testator looks forward to, when he directs his property to pass from one channel to another.” And in page 314, he draws a distinction between cases of provision for children in marriage settlements, and when a devise is limited to children by way of remainder, or upon a contingency which is uncertain when it will take place, if it ever [*] happens at all, which last is precisely the case under consideration.
At the Circuit, it appeared that the lessor of the plaintiff had died a few days before, on which it was moved on the part of the defendant, to stay all further proceedings. I then thought, that the death of the lessor did not abate the suit, and over-ruled the motion. I have not changed my *452 opinion since.* It is now contended that the judgment cannot be entered on the ground that the interest of the lessor has expired, but on the authority of Turner v. Gray, 2 Stra. 1056, I am of opinion that judgment be entered to enable the plaintiff to recover damages and costs; but that the writ of possession be stayed. That this judgment be entered for a moiety of the land devised to Abraham Sayre, in the will of his father, Daniel Sayre,
Rossell, J.
— A verdict has been taken by consent, which, on a case stated, furnishes the following points to be submitted to the Court.
1st. Whether, under the circumstances of the case, the plaintiff is intitled to a verdict, judgment and execution, in the usual form.
2d. What estate the lessor of the plaintiff is intitled to under the will of Daniel Sayre, deceased,
3d. What portion of interest, if any, the lessor of the plaintiff is intitled to, under the said will and facts in the case.
As to the first point, I am of opinion, that the plaintiff, under the authority in 2 Strange, 1056, although he cannot obtain possession, may proceed for damages and costs.
After a careful examination of the very numerous authorities cited by the counsel in this cause, I consider the following principles as settled. The intention of the testator, collected from the whole will, and clearly understood, will govern in the distribution of the estate. That a gift of lands, without expressing what estate, vests an estate for life only. [*] That the heir, by operation of law, being intitled to an estate certain, shall not be divested thereof, but by words manifesting the intention of the testator, to bestow it elsewhere.
That the introductory clause of a will, expressing in general terms, the intention of the testator to dispose of all his estate, shall not divest the heir of his inheritance, without some corresponding words in the particular devise; unless such devise is charged with a debt, which might possibly take money out of the pocket of the devisee; in such case, a fee is created without express words.
It remains then, to apply these principles to the case before us. The introductory clause to the will of Daniel Sayre, under whom the lessor of the plaintiff claims, is in these words: — “As for such worldly estate wherewith it hath pleased God of his goodness to bless me in this life, I give, devise, and bequeath as followeth.” This is said by the *453 counsel for the plaintiff, to plainly manifest the intention of the testator, to dispose of the whole of his estate, real and personal, and taken in connexion with the clause, devising to his sons John and Abraham, a contingent fee in the lands given them, vests in the surviving children, on the authority of the devise over, on failure of such contingency, a fee simple. Lord Chief Justice De Gray, in the case of Frogmorton v. Wright, in 3 Wilson, 418, decided so late as the year 1773, says, “there is no case can be found, when the testator makes use of them, or the like words, “ as touching the disposition of all my temporal estate, I give and dispose thereof as followeth,” and immediately after, devises his lands to divers persons; that was ever determined to carry a fee.” “ It is probable (he continues) the intention of the testator, was to give his nephew William, a fee; but it is a clear rule, that there must be express words, or a necessary implication to disinherit the heir at law.” The introductory clause alone then, not creating a fee, we must search the devising clause, [*] and in that I can find no words necessarily implying the testator’s intention to convoy one; indeed I think the contrary may reasonably be inferred. He seemed to be acquainted with the technical terms by which fees were usually created; for in his devise of lands to Daniel, he says, “ I give and bequeath to my loving son, Daniel, and to his heirs and assigns, &c.” And again in the devise of the remainder, to John and Abraham, “If either of my said sons shall marry, and have a child, then, and in that case, his or their part shall be free or clear to them, their heirs or assigns.” Clearly showing, by thus repeating the words heirs and assigns, that he was acquainted with their import; yet on failure of lawful issue of John or Abraham, when immediately after devising over to his surviving children, these same lands, he omits these words, and it would seem to give an estate for life only, to his surviving children.
But it is again urged by the counsel for the plaintiff, “that as John and Abraham were charged with the maintenance of their sister Phoebe, this charge created a fee simple in the lands devised to them.” And that the words “so gave,” in the devise over, to the surviving children, apply to the quantity of the estate possessed by John and Abraham ; and that being a fee, it must necessarily go on the failure of the contingency, to the survivors.
This does not appear to be correct; it would contradict the plain intention of the testator, who in giving to John and Abraham an estate for life only, in words that cannot be mistaken, does it on the express condition, that they shall maintain their sister Piache. This condition then, or charge *454 by which they held an estate for life, could not of itself, give them a fee in the lands; but if this claim to a fee simple in consequence of the charge on the estate, did not contradict the manifest intention of the testator, I question if it is such a charge as would intitle them to their claims. It should have been a gross sum, or at least such a one as might [*] possibly make them losers by taking an estate for life. But where they could not possibly lose, unless (which is not pretended) the maintenance of Phoebe, would amount to a greater sum than the yearly value of the lands, there appears no pretence for saying they held a fee simple on accepting the bequest; and for these reasons, I am of opinion, that the surviving children held an estate for life only.
Kirkpatrick, C. J.
The law is clear, that to carry a fee, there must be something in the will evidencing an intention in the testator to devise a fee. After the most careful examination of this will, I cannot perceive any such intent. I am therefore, satisfied with the opinions delivered.
Judgment for the plaintiff, with stay of execution against the land.

See 1 Henning v.Munford, 530, (S. P, 8 John’s 496, 2Bibb. 148.Ed,)